UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-13-04639-MWF (JCGx)          **Date:** March 12, 2014
Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

Present:     The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

            Deputy Clerk:                    Court Reporter:
            Rita Sanchez                     Not Reported

            Attorneys Present for Plaintiff:    Attorneys Present for Defendant:
            None Present                       None Present

**Proceedings (In Chambers):**   ORDER GRANTING IN PART AND DENYING IN
                                 PART DEFENDANT'S MOTION FOR PARTIAL
                                 SUMMARY JUDGMENT [33]

        This matter is before the Court on the Motion for Partial Summary Judgment
(the "Motion"), filed by Defendant ADP TotalSource, Inc. ("ADP"). (Docket No. 33).
The Court read and considered the papers on this Motion, and held a hearing on
**March 3, 2014**.  For the reasons stated below, the Court **GRANTS IN PART** and
**DENIES IN PART** the Motion.

**Background**

        On May 20, 2013, Yardley initiated this action by filing a Complaint in Los
Angeles County Superior Court.  (Docket No. 1, Ex. A).  On June 26, 2013, Defendant
ADP TotalSource, Inc. ("ADP") removed this action to this Court.  (Docket No. 1).
On July 15, 2013, Yardley filed a First Amended Complaint ("FAC"), which is the
operative complaint.  (Docket No. 10).

        The FAC alleges six employment-related claims for relief: (1) failure to pay
overtime in violation of California Labor Code §§ 510, 1194, 1198; (2) failure to
provide meal and rest periods in violation of California Labor Code §§ 226.7, 512; (3)
failure to provide itemized wage statements in violation of California Labor Code §
226; (4) wrongful termination in violation of public policy; (5) intentional infliction of
emotional distress; and (6) violations of California's Unfair Competition Law, Cal.
Bus. & Profs. Code § 17200 *et seq.* (*See generally* FAC).

---

**Case No.  CV-13-04639-MWF (JCGx)                Date:  March 12, 2014**
Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

On February 3, 2014, ADP filed: (1) this Motion (Docket No. 33); and (2) a Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendant ADP TotalSource's Motion for Partial Summary Judgment ("SUF") (Docket No. 33-2).

On February 10, 2014, Yardley filed: (1) an Opposition to Defendant's Motion for Partial Summary Judgment (the "Opposition") (Docket No. 36); (2) a Statement of Genuine Issues of Disputed Material Facts in Opposition to Defendant's Motion for Partial Summary Judgment ("SGD") (Docket No. 36-1); and (3) Objections to Evidence in Support of Opposition to Defendant's Motion for Partial Summary Judgment ("Yardley's Objections") (Docket No. 36-2).

On February 14, 2014, ADP filed: (1) a Reply in Further Support of Defendant ADP TotalSource, Inc.'s Motion for Partial Summary Judgment (the "Reply") (Docket No. 40); (2) a Reply to Plaintiff's Separate Statement of Facts in Opposition to Defendant's Motion for Partial Summary Judgment ("ADP's Response") (Docket No. 40-1); and (3) Objections to Plaintiff's Evidence Submitted with Her Opposition to Defendant's Motion for Partial Summary Judgment ("ADP's Objections") (Docket No. 40-2).

The relevant factual background is as follows:

Yardley began working for ADP on November 9, 2009 as a Human Resources Business Partner ("HRBP").  (SGD, ¶ 1).  Yardley worked thousands of hours of overtime, and her workload was double that of the vast majority of other HRBPs in the United States.  (SGD, ¶¶ 34-36).

Yardley complained to her supervisor, Kristen Appleman, on three separate occasions in the summer of 2011, January 2012, and mid-June 2012, that the HRBP position was misclassified as exempt.  (SGD, ¶¶ 39, 44, 45).  In response to Yardley's complaint in the summer of 2011, Appleman responded that the HRBP position was exempt.  (SGD, ¶ 40).  Appleman then ignored Yardley's second complaint in January 2012.  (SGD, ¶ 44).  In response to Yardley's third complaint in mid-June 2012,

**Case No.  CV-13-04639-MWF (JCGx)**               **Date:  March 12, 2014**

Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

---

Appleman allegedly told Yardley that she did not want Yardley in her department anymore.  (SGD, ¶¶ 17, 46; FAC, ¶ 21).

At a meeting in July 2012 attended by ADP executives and the Southern California HRBPs, Yardley again complained that the HRBPs were misclassified.  (SGD, ¶¶ 14, 51-52).  At the meeting, ADP's HR Services Executive Chuck Schneider responded that it was not the appropriate time to raise that issue.  (SGD, ¶ 53).  After that meeting, ADP stated it would investigate Yardley's complaint, but delayed in doing so.  (SGD, ¶¶ 58, 66-67).

On October 25, 2012, Yardley submitted a resignation letter stating that her resignation was effective as of December 31, 2012.  (SGD, ¶ 23).  ADP set Yardley's last day of employment on November 9, 2012, instead of December 31, 2012.  (SGD, ¶ 26).

**Evidentiary Objections**

Both sides have filed a number of objections.  (*See* Yardley's Objections; ADP's Objections).  The Court addresses below those objections that are relevant to determining this Motion.  The objections not addressed below are **OVERRULED** as irrelevant to determining this Motion.

**Motion for Summary Judgment**

In deciding this Motion under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

---

**Case No.  CV-13-04639-MWF (JCGx)**          **Date:  March 12, 2014**
Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

___

ADP seeks summary judgment on three of Yardley's claims: (1) wrongful termination in violation of public policy, (2) intentional infliction of emotional distress, and (3) missed meal and rest periods.  (Mot. at 1-2).  ADP further seeks summary judgment on whether Yardley can seek punitive damages.  (*Id.*).

**Wrongful Termination**

The FAC alleges that ADP wrongfully terminated Yardley in violation of public policy by terminating her for reporting ADP's alleged failure to pay overtime wages. (FAC, ¶¶ 48-59).  In the Motion, ADP construed this claim as being based solely on California's whistleblower statute, California Labor Code § 1102.5(c).  (Mot. at 6, n.2). In the Opposition, Yardley clarifies that the wrongful termination claim is based not only on California's whistleblower statute, but also on ADP's retaliation against Yardley's complaint about not receiving overtime wages.  (Opp. at 14).  However, this distinction does not affect the analysis, since both parties agree on the prima facie elements for Yardley's wrongful termination claim.  (Mot. at 7; Opp. at 13).

To establish a prima facie claim for wrongful termination based on retaliation, "'the plaintiff must show that (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.'"  *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1109, 60 Cal. Rptr. 3d 45 (2007).

With regard to such retaliation claims, California follows the burden-shifting analysis under *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668.  *See Loggins*, 151 Cal. App. 4th at 1108-09.  Under *McDonnell*, (1) the burden is on the plaintiff to make out a prima facie claim; (2) the burden then shifts to the employer to show "that there was a legitimate, nonretaliatory reason for the adverse employment action"; and (3) then the burden shifts back to the plaintiff to show that "the employer's proffered reasons were untrue or pretextual." *See Loggins*, 151 Cal. App. 4th at 1109.

___

**Case No.  CV-13-04639-MWF (JCGx)**              **Date:  March 12, 2014**

Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

"When an employer moves for summary judgment, however, 'the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden.'"  *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (citation omitted).  Accordingly, "the employer has the initial burden of showing (1) the plaintiff cannot establish one or more of the elements of his or her prima facie case or (2) there was a legitimate, non-retaliatory reason for terminating the plaintiff."  *Hess v. Madera Honda Suzuki*, No. 1:10-CV-01821-AWI, 2012 WL 4052002, at *12 (E.D. Cal. Sept. 14, 2012) (citations omitted).

Here, ADP argues that Yardley cannot establish a claim for wrongful termination based on retaliation because (1) she cannot show that she was terminated, (2) she cannot establish causation between her complaints about overtime and her alleged termination, (3) ADP had a legitimate business reason to end Yardley's employment, (4) Yardley cannot prove that ADP's reasons was pretextual, and (5) Yardley cannot show that she was constructively discharged.  (Mot. at 6-15; Reply at 2-11).

### *Termination*

With regard to termination, the parties do not appear to dispute the underlying facts.  On October 25, 2012, Yardley sent a resignation letter to a supervisor Shannon Rubio stating, in pertinent part: "My official resignation date will be effective as of December 31, 2012.  I understand that staffing, training and the client load will take a toll on my team members and I am willing to work full-time [through] November 16, and part-time [through] December 31."  (Deposition of Jennifer Yardley, 19:4-22:9, Ex. 201 (the "Yardley Deposition") (Docket No. 33-3, Ex. A)).  At her deposition, Yardley testified that her intent in writing this letter was to resign her employment. (Yardley Depo. 21:24-22:9).  However, instead of having Yardley work until December 31, 2012, Mary Wellendorf, who worked for ADP's Human Resources department, told Yardley that her employment would end on November 9, 2012. (Yardley Depo, 36:1-5; Deposition of Mary Wellendorf, 175:1-176:9, Ex. 60 (the "Wellendorf Deposition") (Docket No. 33-3, Ex. D)).

CIVIL MINUTES—GENERAL

**Case No.  CV-13-04639-MWF (JCGx)          Date:  March 12, 2014**

Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

Yardley does not dispute the contents of her letter dated October 25, 2012, or that ADP asked her to end her employment two weeks after it received her letter. (Yardley's SGD, ¶¶ 23, 68, 69).  Instead, Yardley attempts to create a disputed fact by asserting that Wellendorf admitted at her deposition that she did not accept Yardley's resignation, but instead, terminated her on November 9, 2012.  (Opp. at 15; SGD, ¶¶ 69, 70).  However, Wellendorf's deposition testimony does not support this interpretation.  Wellendorf testified that "ADP accepted [Yardley's] resignation, but did not accept her offer to stay with the organization longer than our practice of two weeks."  (Wellendorf Depo., 175:16-176:9).  Accordingly, Wellendorf's testimony does not create a genuine issue of disputed fact.

The parties thus do not dispute the underlying events, but do dispute whether these events amount to a resignation or termination.  Yardley argues that ADP's act of moving her last day of employment up to November 9, 2012 amounted to a termination. (Opp. at 15).  In contrast, ADP argues that Yardley's letter served as a resignation that severed her employment relationship with ADP.  (Mot. at 8).

The parties have not provided any case law directly on point as to whether the employer's advancement of a resignation date amounts to termination.  However, it appears that ADP has the better argument.

The California Court of Appeal has held that "a resignation severs the employment relationship on the date set by the resignation and that an attempt to withdraw it prior to that date is a request for reemployment which the employer may refuse." *Rabago v. Unemployment Ins. Appeals Bd.*, 84 Cal. App. 3d 200, 207, 148 Cal. Rptr. 499 (1978).  The court reasoned that "the employee who initiated the action by giving the initial notice . . . in every real and practical sense is the moving party." *Id.* at 207-08.

Yardley argues that *Rabago* emphasized that a resignation severs the employment relationship "***on the date set by the resignation***," *Rabago*, 84 Cal. App. 3d at 207 (emphasis added), and thus, it was not Yardley's choice to terminate the relationship as of November 9, 2012.  (Opp. at 15).  However, under this rationale, an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

**Case No.  CV-13-04639-MWF (JCGx)**          **Date:  March 12, 2014**
Title:       Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

employee could submit a resignation letter setting the effective date as far out as she likes (*e.g.*, six months out, or one year out), and any attempt by the employer change that effective date would constitute a termination.  Moreover, under this rationale, ADP would be required to allow Yardley to work part-time for at least six of her remaining weeks, and any refusal on ADP's part would be considered a termination.  This reading of employment law would appear to distort common sense.  An employee cannot dictate the conditions on which she is going to resign.

The evidence in the record indicates that Yardley submitted a resignation letter with the intent of voluntarily resigning her position.  She began her letter by stating: "After considerable thought and soul-searching, I have decided to resign from my position." (Yardley Depo., Ex. 201).  The fact that ADP asked Yardley to stop working two weeks after receiving her notice of resignation does not create a genuine issue of material fact as to whether Yardley was terminated.

### *Legitimate, Nonretaliatory Reason*

Even assuming that Yardley can prove that she was terminated by ADP, ADP has articulated a legitimate, nonretaliatory reason for advancing Yardley's last day to November 9, 2012.

ADP offers two reasons for advancing Yardley's last day to November 9, 2010.

*First*, it was Wellendorf's customary practice, as internal Human Resources director, to permit employees to leave on the date of resignation and be paid two weeks in lieu of notice, or to work an additional two weeks and be paid for those two weeks. (Mot. at 10).  This customary practice was established by Wellendorf's testimony in her deposition dated December 18, 2013, and in her declaration dated January 31, 2014.  (Wellendorf Depo., 173:10-25; Declaration of Mary Wellendorf, ¶ 7 (the "Wellendorf Declaration") (Docket No. 33-4, Ex. 3)).  ADP also submitted a note that was handwritten by Wellendorf during her conversation with Yardley on October 26, 2012.  (Wellendorf Depo., Ex. 60).  The note states, "reminded her that ADP practice is two weeks notice – stay or pay out." (*Id.*).  The note was authenticated by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

**Case No.  CV-13-04639-MWF (JCGx)          Date:  March 12, 2014**
Title:        Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

Wellendorf at her deposition.  (Wellendorf Depo., 170:2-171:3).  Bolstering
Wellendorf's testimony, Appleman also testified: "Since I started with ADP, I have
been involved in over 10 situations in which HRBP's have resigned from ADP.  I am
not aware of any HRBP working longer than two weeks after giving notice of
resigning."  (Declaration of Kristen Appleman, ¶ 8 (the "Appleman Declaration")
(Docket No. 33-4, Ex. 2)).

        Yardley objects to the testimony by Wellendorf quoted above, as well as the
introduction of her handwritten note.  Yardley asserts that Wellendorf's testimony in
her declaration and deposition are hearsay and lack foundation, and that her testimony
about the contents of the handwritten note violates the best evidence rule as to the
handwritten note.  (*See* Yardley's Objections at 1).  However, Wellendorf's testimony
in both her declaration and deposition are based on her personal knowledge.  To the
extent that Wellendorf reads from her handwritten note during her deposition, that note
has also been submitted into evidence.  Accordingly, Yardley's objections are
overruled.

        ***Second***, ADP did not let Yardley work through December 31, 2012, in part
because Yardley offered to work part-time for at least six of those weeks, and ADP did
not believe that a part-time HRBP could meet the business needs of responding to
client questions and issues during normal business hours.  (Mot. at 10-11).  This
rationale was established by the following testimony by Appleman:

        The HRBP job does not lend itself to part time work.  Each client is assigned to
        a particular HRBP.  Clients generally operate during normal business hours
        (Monday through Friday, 8:00 a.m. to 5:00 p.m.), and HRBP[s] need to be
        available to take calls from clients when issues arise during those hours.  The
        client needs to be able to reach its assigned HRBP, without worrying whether
        the HRBP is working on a particular day or at a particular time.

(Appleman Decl., ¶ 10).  Wellendorf also testified that she agreed with Appleman's
assessment that a part-time HRBP could meet the clients' needs.  (Wellendorf Decl., ¶
9).

**Case No.  CV-13-04639-MWF (JCGx)**              **Date:  March 12, 2014**
Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

Yardley objects to Appleman's testimony as lacking foundation.  (Yardley's Objections at 2).  However, Appleman's testimony was based on her personal knowledge as the Vice President of Client Services for the ADP Resource division, a position that required her to supervise client services operations and HRBPs. (Appleman Decl., ¶¶ 1, 2).  Yardley also objects to Wellendorf's testimony as hearsay. (Yardley's Objections at 1).  While Wellendorf's testimony as to what Appleman said may be hearsay, Wellendorf's assent to Appleman's analysis is based on Wellendorf's personal knowledge and is admissible.  Accordingly, Yardley's objections are overruled.

Therefore, ADP has established two legitimate nonretaliatory reasons for advancing Yardley's last day of employment, and Yardley has not demonstrated that a genuine issue of material fact exists as to either reason.

### *Evidence of Pretext*

Once the employer has established its burden, the burden shifts back to the plaintiff.  The plaintiff's burden is as follows:

> Once the employer has offered a legitimate, nondiscriminatory reason for the adverse employment action, a "'plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated. . . .'" . . . In demonstrating that an employer's proffered nondiscriminatory reason is false or pretextual, "'[an employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. . . . Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them "unworthy of credence," . . .

Case No.  CV-13-04639-MWF (JCGx)            Date:  March 12, 2014
Title:        Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

and hence infer "that the employer did not act for the [asserted] nondiscriminatory reasons." . . .

*Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 314, 115 Cal. Rptr. 3d 453 (2010) (internal citations omitted).

Yardley has not demonstrated a genuine issue of material fact as to whether ADP's first proffered business reason of permitting employees to leave on the date of resignation and be paid two weeks in lieu of notice, or to work an additional two weeks and be paid for those two weeks, was pretextual.  Yardley asserts that Wellendorf never explained to her that ADP had such a custom, that Wellendorf never communicated this custom to HRBP supervisors Rubio or Christina Floor, and that ADP's written Termination Policy does not state that an employee can only work two weeks after resigning.  (SGD, ¶¶ 72, 73, 75).  In other words, Yardley essentially points out that ADP lacks additional evidence, other than the testimony of Wellendorf and Appleman, of the practice of letting resigning employees work an additional two weeks.  However, the lack of additional evidence does not demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions," such that "a reasonable fact finder could rationally find [Wellendorf's and Appleman's testimony] 'unworthy of credence.'"  *Sandell*, 188 Cal. App. 4th at 314.  Moreover, Rubio testified that she was not aware of an ADP employee being permitted to work more than two weeks after their resignation, which is consistent with Wellendorf's testimony that such a practice existed.  (Deposition of Shannon Rubio, 90:25-91:17 (the "Rubio Deposition") (Docket No. 36-5, Ex. 7)).

Nor has Yardley demonstrated a genuine issue of material fact as to whether ADP's second proffered business reason that a part-time HRBP could not meet its clients' business needs was pretextual.  Yardley asserts that ADP has not produced evidence of a written policy that HRBPs could not perform part-time work (SGD, ¶ 77), and that Appleman and Wellendorf never informed Ms. Floor that HRBPs could not work part-time (Declaration of Christina Floor, ¶ 5 (Docket No. 36-4)).  However, as indicated above, the absence of a written policy or other additional evidence does

Case No.  CV-13-04639-MWF (JCGx)                    Date:  March 12, 2014
Title:       Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

not demonstrate such a weakness or contradiction in ADP's evidence so as to create a genuine issue of fact.

Yardley also asserts that some HRBPs were in fact permitted to work part-time. (SGD, ¶ 74).  However, Yardley could not identify one HRBP who worked part-time. (Declaration of Jennifer Yardley, ¶ 20 (the "Yardley Declaration") (Docket No. 36-8); Yardley Depo., 41:23-25).  Moreover, in her deposition, Yardley testified that the HRBPs who worked part-time were given "accommodations" after "[coming] back after certain things," indicating that ADP allowed other employees to work part-time as a reasonable accommodation.  (Yardley Depo., 41:6-12).

The lack of additional evidence that a part-time HRBP could not meet client needs, and the vague assertion that other HRBPs were permitted to work part-time, potentially as a reasonable accommodation, simply do not call into question Appleman and Wellendorf's determination that a part-time HRBP could not meet the needs of Yardley's clients in November and December 2012.

Accordingly, Yardley has not established a genuine issue of material fact as to whether ADP's reason for advancing Yardley's last day of employment was pretextual.

### *Constructive Discharge*

ADP argues that Yardley cannot demonstrate (1) that she suffered intolerable working conditions, and (2) that any intolerable conditions were caused by her complaints about being misclassified.  (Mot. at 13-15; Reply at 7-11).

To establish a constructive discharge claim, the plaintiff must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign."  *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251, 32 Cal. Rptr. 2d 223 (1994).  This standard is objective and is considered from the

Case No.  CV-13-04639-MWF (JCGx)          Date:  March 12, 2014

Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

perspective of a reasonable person, rather than the subjective perspective of the plaintiff.  *See id.* at 1248.

The California Supreme Court has further elaborated:

. . . The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.  The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee.

In order to amount to a constructive discharge, adverse working conditions must be unusually "aggravated" or amount to a "continuous pattern" before the situation will be deemed intolerable.  In general, "[s]ingle, trivial, or isolated acts of [misconduct] are insufficient" to support a constructive discharge claim. . . . Moreover, a poor performance rating or a demotion, even when accompanied by reduction in pay, does not by itself trigger a constructive discharge.

*Turner*, 7 Cal. 4th at 1246-47.

Here, the undisputed conditions underlying Yardley's employment are as follows:

- Yardley worked thousands of hours of overtime, and her workload was double that of the vast majority of other HRBPs in the United States (SGD, ¶¶ 34-36);

- Yardley complained to her supervisor, Appleman, on three separate occasions in the summer of 2011, January 2012, and mid-June 2012, that the HRBP position was misclassified as exempt (SGD, ¶¶ 39, 44, 45);

- In response to the first complaint, Appleman said the position was exempt, and Appleman ignored the second complaint (SGD, ¶¶ 40, 44);

Case No.  CV-13-04639-MWF (JCGx)          Date:  March 12, 2014
Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

- In response to the third complaint in mid-June 2012, Appleman told Yardley that she was "too vocal" about the overtime issue and had "upset too many members of management," and that Appleman did not feel "comfortable with [Yardley] in Resource, anymore" (SGD, ¶ 46);

- At a meeting in July 2012 between ADP executives and the Southern California HRBPs, Yardley publicly complained that the HRBPs were misclassified as exempt (SGD, ¶¶ 51-52);

- In response, ADP's HR Services Executive Chuck Schneider said, "We'll discuss that, but this isn't the appropriate time to bring that up," and after the meeting, ADP stated that it would investigate Yardley's complaint (SGD, ¶¶ 53, 58);

- However, Yardley asserts that ADP did nothing to investigate her complaint for nearly three months, and did not take her complaint seriously (SGD, ¶¶ 59, 66-67);

- Yardley testified that Appleman "might" have lowered her performance review from "exceeds expectations" to "meeting expectations" in the fall of 2012 (SGD, ¶ 22), though ADP asserts that the lowered performance review was based on Rubio's observations of Yardley's client meetings, complaints from co-workers, and Yardley's communication style (SGD, ¶ 21);

- On October 25, 2012, Yardley submitted a resignation letter stating that her resignation was effective as of December 31, 2012 (SGD, ¶ 23); and

- ADP set Yardley's last day of employment on November 9, 2012, instead of December 31, 2012 (SGD, ¶ 26).

**Case No.  CV-13-04639-MWF (JCGx)**                    **Date:  March 12, 2014**
Title:        Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

Yardley's strongest argument is that her working significant overtime without pay and carrying a workload double that of most other HRBPs constituted intolerable working conditions.  In support of her argument, Yardley analogizes this case to *Hess v. Madera Honda Suzuki*, No. 1:10-CV-01821-AWI, 2012 WL 4052002 (E.D. Cal. Sept. 14, 2012).  In *Hess*, the plaintiff brought a claim for wrongful termination in violation of public policy.  *Id.* a *1.  The plaintiff was hired as an office manager by Defendant in September 2006.  *Id.*  Her bimonthly paycheck was initially $2,000, which was then increased to $2,769.23 in April 2007.  *Id.*  Between September 2006 and January 2008, she received regular bimonthly pay checks.  *Id.*  However, in January 2008, she stopped getting paid.  *Id.*  When she confronted a supervisor and demanded her wages, she was told that the company was experiencing financial difficulties, but she was "assured . . . that she would be compensated when the company's financial condition improved."  *Id.*  Yardley argues her case is analogous to *Hess* because she worked thousands of hours of overtime for three years without pay. (Opp. at 20).

However, this case is different in kind from *Hess*.  In *Hess*, the plaintiff's working conditions were drastically altered by a severe pay cut.  The Court found that "a reduction in compensation as severe as the one experienced by Plaintiff could lead a reasonable trier of fact to conclude Plaintiff's working conditions were so intolerable she had to involuntarily stop working as the office manager."  *Hess*, 2012 WL 4052002, at *13.  In contrast, Yardley experienced no severe change in condition akin to a pay cut or demotion.  As stated above and discussed more fully below, the record indicates that her conditions were largely consistent: she worked many hours of overtime, as an exempt employee, without overtime pay throughout her entire employment at ADP.

Moreover, working without any pay is substantially different than working overtime hours on a fixed salary.  Presumably, working without pay would make it impossible for many individuals to essentially survive (*i.e.*, pay their rent, pay for bills, buy food, etc.), and thus, constitutes intolerable conditions.  In contrast, Yardley consistently received a paycheck, which was never reduced, but actually increased as she was promoted.

Case No.  **CV-13-04639-MWF (JCGx)**          Date:  **March 12, 2014**

Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

The Court finds *Palacio v. Progressive Ins. Co.*, 244 F. Supp. 2d 1040 (C.D. Cal. 2002) to be more instructive than *Hess*.  In *Palacio*, the employer's alleged failure to pay the plaintiff overtime for three years did not constitute intolerable working conditions, where such work had no effect on the plaintiff's health or financial status, and the plaintiff "was not subjected to harsh treatment relative to co-workers."  *Id.* at 1055.  As was the case in *Palaccio*, Yardley has not presented any evidence that the excessive hours of work affected her health or financial status.  At the hearing, Yardley's counsel argued that Yardley suffered emotional distress as a result of her work, but there is no evidence in the record on that issue.

The district court in *Palacio* noted that "[i]ntolerability is typically reserved for the jury."  *Id.* at 1053 (citing *Huskey v. City of San* Jose, 204 F.3d 893, 900 (9th Cir. 2000)).  Indeed, the district court noted that failure to pay overtime for three years could potentially give rise to intolerable conditions.  *Id.* at 1055.  Moreover, unlike the plaintiff in *Palaccio*, Yardley has asserted that her workload was double that of most of her other coworkers, which could create a genuine issue as to whether she was "subjected to harsh treatment relative to co-workers."  *Id.*  "An employee is protected from . . . unreasonably harsh conditions, in excess of those faced by his [or her] co-workers."  *Turner*, 7 Cal. 4th at 1247 (citation omitted).

However, this argument fails for two main reasons.

***First***, the fact that Yardley stayed on in her position for three years indicates that those conditions were not intolerable.  While not necessarily dispositive, "[t]he length of time the plaintiff remained on the job may be *one* relevant factor in determining the intolerability of employment conditions from the standpoint of a reasonable person."  *Id.* at 1254 (emphasis in original); *Mullins v. Rockwell Int'l Corp.*, 15 Cal. 4th 731, 740, 63 Cal. Rptr. 2d 636 (1997) ("The longer the employee delays his or her resignation, the more difficult it may be to prove that the allegedly intolerable conditions of employment actually were intolerable on an objective basis.").

For example, in *Hess*, the Court noted "[o]rdinarily, [it] might be inclined" to find that the plaintiff's "continuing work without pay for two years . . . is not the action

**Case No.** CV-13-04639-MWF (JCGx)          **Date:** March 12, 2014
**Title:**     Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

of a person for whom working conditions are so intolerable or aggravated the person would be compelled to resign." *Hess*, 2012 WL 4052002, at *14. The only reason that the Court did not find so in *Hess* was that "the parties may have had an agreement to provide Plaintiff with backpay for unpaid hours." *Id.*

Here, there was no indication that ADP was inclined to pay Yardley overtime until July 2012 at the earliest. Yardley's first three complaints about not being paid overtime were largely ignored. The first indication that ADP may address Yardley's complaints occurred in July 2012 when ADP began an investigation. Yardley also testified that "[a]t one point" Wellendorf told her "ADP would make it right," which she interpreted as meaning that ADP would pay her back for her overtime hours. (Yardley Decl., ¶ 13). While Yardley does not give an exact date for this statement, the context of Yardley's testimony indicates that Wellendorf's statement occurred in or around August 2012, after ADP began investigating her complaint. (*Id.*). At the hearing, Yardley's counsel argued that Wellendorf's statement occurred in October 2012, while ADP's counsel argued that it occurred on November 9, 2012 as demonstrated by Wellendorf's handwritten note (Wellendorf Depo., Ex. 60). This dispute, however, does not alter the fact that that earliest point at which ADP responded to Yardley's complaint was July 2012. By this point, Yardley had been working at ADP for two years and eight months without any indication that she may get overtime pay. These actions simply do not indicate that her overtime hours and disproportionate workload were intolerable. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998) (stating that constructive discharge occurs when "the individual has simply had enough; she can't take anymore").

Furthermore, Yardley's willingness to continue working at ADP after she realized it was not seriously investigating her complaint does not indicate that her working conditions were intolerable. ADP had assigned J.C. Nielson to investigate Yardley's complaint in July 2012. (ADP's Response, ¶ 61; Yardley Decl., ¶ 13). It is undisputed that Yardley was growing increasingly frustrated at Mr. Nielson's handling of the investigation. (ADP's Response, ¶ 61). Yardley then testified that "[s]oon after receiving Mr. Nielson's September 27, 2012 e-mail, [she] realized that ADP was not taking [her] complaints seriously." (Yardley Decl., ¶ 15). However, Yardley did not

**Case No.** **CV-13-04639-MWF (JCGx)**          **Date:  March 12, 2014**

Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

submit her resignation letter until October 25, 2012, at which point she was willing to continue working at ADP full-time for three more weeks and part-time for another six weeks.  Yardley's willingness to work full-time for an additional two months after realizing ADP would not pay her overtime does not indicate that her overtime hours and disproportionate workload were intolerable.  *See Poland v. Chertoff*, 494 F.3d 1174, 1185 (9th Cir. 2007) (finding that the plaintiff's transfer to Virginia did not constitute intolerable working conditions where the plaintiff "worked in Virginia for five months before deciding to retire," and "[e]ven after he decided to retire, [the plaintiff] worked the same job for three more months").

       *Second*, Yardley has not asserted a claim simply for constructive discharge. Rather, she has asserted a claim for constructive discharge in violation of public policy, where the underlying policy violation was ADP's alleged retaliation against Yardley's complaints about being misclassified as exempt.  (FAC, ¶¶ 48-59).  Accordingly, the intolerable conditions giving rise to constructive discharge constitute "adverse employment action," which must be causally linked to Yardley's protected activity of complaining about being misclassified as exempt.  *Loggins*, 151 Cal. App. 4th at 1109. The evidence before the Court indicates that Yardley's excessive hours and disproportionate workload occurred from the beginning of Yardley's employment and were consistent throughout her employment.  (*See* Yardley Decl., ¶ 3 (Yardley testified that over the course of her three years of employment, she "worked closed to 6,000 hours of overtime")).  There is no evidence that this workload increased after she began complaining in the summer of 2011.  (*See* Yardley Decl., ¶ 7 ("After Ms. Appleman left Southern California in July 2011, I *continued* . . . working thousands of hours of unpaid overtime.") (emphasis added).  Because these working conditions preexisted her initial complaint in summer 2011 about being misclassified, her overtime hours and disproportionate workload could not have constituted retaliation against Yardley's complaints.

       The adverse actions that occurred after Yardley began complaining about being misclassified in the summer of 2011 do not rise to the level of intolerable conditions.

CIVIL MINUTES—GENERAL

**Case No.  CV-13-04639-MWF (JCGx)            Date:  March 12, 2014**

Title:       Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

At her deposition, Yardley testified that she experienced only two changes in her employment after June 2011: (1) "[Appleman] saying she didn't want me to work in Resource," and (2) "I think [Appleman] might have lowered my performance review score."  (Yardley Depo., 129:5-14).

While Appleman's single comment that she did not want Yardley in Resource anymore was perhaps callous, it did not constitute intolerable conditions.  *See Palacio v. Progressive Ins. Co.*, 244 F. Supp. 2d 1040, 1054 (C.D. Cal. 2002) ("While an undeserved critical comment may be frustrating, it is not sufficiently harsh or oppressive to constitute constructive discharge."); *cf. Thompson v. Tracor Flight Sys., Inc.*, 86 Cal. App. 4th 1156, 1172, 104 Cal. Rptr. 2d 95 (2001) (finding that "severe verbal abuse of an employee" can support a finding of constructive discharge, if it involved a "***continuous*** pattern of conduct") (emphasis added); *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 655 (7th Cir. 2000) ("A person who is told ***repeatedly*** that he is not wanted, has no future, and can't count on ever getting another raise would not be acting unreasonably if he decided that to remain with this employer would necessarily be inconsistent with even a minimal sense of self-respect, and therefore intolerable.") (emphasis added).  It is undisputed that Appleman's comment was not followed by written or formal discipline.  (Yardley Depo., 132:24-135:13).

Similarly, the lowering of Yardley's performance review from "exceeds expectations" to "meets expectations" in the fall of 2012 did not constitute intolerable conditions.  *See Palacio*, 244 F. Supp. 2d at 1054 (stating that "an average evaluation combined with a pay increase, however modest, cannot raise the specter of constructive discharge"); *Casenas v. Fujisawa USA, Inc.*, 58 Cal. App. 4th 101, 115, 67 Cal. Rptr. 2d 827 (1997) (finding that "[a]s a matter of law," the plaintiff's allegations that "she received an unfair performance evaluation and was not considered for promotion to a management position" "d[id] not create intolerable working conditions transforming a voluntary resignation into constructive discharge"); *Turner*, 7 Cal. 4th at 1247 (stating that "a poor performance rating or a demotion, even when accompanied by reduction in pay, does not by itself trigger a constructive discharge").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

**Case No.  CV-13-04639-MWF (JCGx)**          **Date:  March 12, 2014**
Title:       Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

It is a close question whether Yardley has established a genuine question of material fact as to whether she was constructively discharged.  However, Yardley has not established a genuine issue of material fact as to whether she suffered intolerable working conditions *that were causally related* to her complaints about being misclassified.  The Motion is **GRANTED** as to the wrongful termination claim.

### Intentional Infliction of Emotional Distress

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050, 95 Cal. Rptr. 3d 636 (2009) (internal quotation marks and citations omitted).

ADP seeks summary judgment on Yardley's claim for intentional infliction of emotional distress ("IIED") on the grounds (1) that Yardley's alleged misclassification as exempt and termination does not establish extreme and outrageous conduct, (2) that Yardley cannot show that ADP intended to cause emotional distress, and (3) that the IIED claim is preempted by California's worker's compensation statute.  (Mot. at 15-18).

With regard to extreme and outrageous conduct, "'[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496, 76 Cal. Rptr. 2d 540 (1998).

Yardley argues that ADP's misclassification of her position amounts to extreme and outrageous conduct because it can constitute a misdemeanor.  *See* Cal. Lab. Code § 553 ("Any person who violates this chapter is guilty of a misdemeanor.").  In arguing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04639-MWF (JCGx)                Date:  March 12, 2014
Title:       Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

that any criminal violation is *per se* outrageous, Yardley relies solely on *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001).

However, *Cramer* can be distinguished from this case in that *Cramer* involved a direct violation of California penal law.  In *Cramer*, the defendant, a large trucking company, used "hidden cameras and two-mirrors in restrooms to conduct clandestine surveillance" of its employees, in violation of California Penal Code § 653n.  *Id.* at 688, 697.  The Ninth Circuit thus specifically stated that "[t]he conduct at issue here was a violation of California penal law, and therefore per se outrageous."  *Id.* at 697. Here, ADP's alleged misclassification of Yardley would not violate penal law.  Rather, it would violate the California Labor Code, which, in turn, makes any violation of Division 2, Part 2, Chapter 1 a misdemeanor.  *See* Cal. Lab. Code § 553.

Under Yardley's reasoning, any violation of Division 2, Part 2, Chapter 1of the labor code would constitute extreme and outrageous conduct sufficient to support an IIED claim.  For example, if an employer fails to provide an employee with one ten-minute rest period as required by California Labor Code § 512, that action would amount to extreme and outrageous conduct that would sustain an IIED claim.  The Court simply does not find that such reasoning is warranted by the scope and intent of *Cramer*.

Moreover, in *Cramer*, the Ninth Circuit noted that the defendant's use of two-way mirrors was "a per se violation of the penal code," regardless of "the reasonable expectations of those so viewed."  *Cramer*, 255 F.3d at 695.  In contrast, whether ADP misclassified Yardley entails a complicated analysis that depends in part on what the employer's expectations were, how reasonable those expectations were, and whether the employee's performance diverged from those expectations.  Accordingly, employers may make an honest mistake in misclassifying employees, without intending to do so.  Under Yardley's reasoning, such unintentional misclassifications would nonetheless amount to extreme and outrageous conduct (*i.e.*, goes beyond all possible bounds of decency) due to California Labor Code § 553.  The Court is simply not persuaded by such reasoning.

Case No.  CV-13-04639-MWF (JCGx)          Date:  March 12, 2014
Title:      Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

Furthermore, case law indicates that personnel management decisions, such as classifying employees as exempt or lowering a performance review, does not constitute extreme and outrageous conduct to support an IIED claim.  "Managing personnel is not outrageous conduct beyond the bounds of human decency," even if "improperly motivated."  *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80, 53 Cal. Rptr. 2d 741 (1996).  "However, a claim of intentional infliction of emotional distress is possible '[w]here the behavior goes beyond the act of termination'" or other management activity.  *Dagley v. Target Corp., Inc.*, No. CV 09-1330VBFAGRX, 2009 WL 910558, at *3 (C.D. Cal. Mar. 31, 2009).  Here, the majority of ADP's actions did not go beyond management activity.  ADP classified all HRBPs, not only Yardley, as exempt.  In response to Yardley's initial complaints, she was told that her position was exempt.  ADP then eventually began investigating Yardley's complaint that she was misclassified.  It is also possible that Appleman lowered Yardley's performance review to "meets expectations."  However, these types of personnel management activity simply do not constitute extreme and outrageous conduct.  *See, e.g.*, *King v. AC & R Adver.*, 65 F.3d 764, 769 (9th Cir. 1995) (finding that, among other allegations, the defendants' efforts to change the plaintiff's employment status and restructure his compensation, the defendants' firing of the plaintiff and the subsequent rehiring of him, and the age-related comments by the plaintiff's coworkers, did not constitute extreme and outrageous conduct); *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883, 257 Cal. Rptr. 338 (1989) (finding that the defendants' withdrawal of the plaintiff's termination package and replacing it with a less favorable package, as well as the defendants' demotion of the plaintiff to a receptionist for her last 30 days of employment, did not constitute extreme and outrageous conduct).

The only assertion that ADP went beyond personnel management activity was Appleman's one-time comment that she did not want Yardley in Resource anymore. While this comment may have been callous and rude, it was not extreme and outrageous.  *Hughes v. Pair*, 46 Cal. 4th 1035, 1051, 95 Cal. Rptr. 3d 636 (2009) ("Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (internal quotation marks and citations omitted); *Shoemaker v. Myers*, 52 Cal. 3d 1, 25,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04639-MWF (JCGx)            Date:  March 12, 2014
Title:       Jennifer Yardley -*v*- ADP TotalSource, Inc., et al.

276 Cal. Rptr. 303 (1990) (finding that the defendant's statement that he knew plaintiff's termination would not be upheld, but that he "just wanted to cause [plaintiff] as much grief as possible," did not support an IIED claim).

Accordingly, the Court finds that Yardley cannot establish as a matter of law that ADP's conduct was extreme and outrageous.  The Motion is **GRANTED** as to the IIED claim.

### Punitive Damages

The FAC only seeks punitive damages for the wrongful termination and the IIED claims.  Because the Yardley cannot as a matter of law establish those claims, she also cannot recover punitive damages.

The Motion is **GRANTED** as to punitive damages.

### Missed Meal and Rest Periods

Yardley also asserts that ADP failed to provide her an uninterrupted 30-minute meal period and two 10-minute rest periods, as required by California Labor Code § 512.  (FAC, ¶¶ 38-43; Opp. at 25-26).

Whether Yardley was entitled to meal and rest breaks depends on whether she was an exempt or nonexempt employee.  *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1018, 139 Cal. Rptr. 3d 315 (2012) ("[California state] law obligates employers to afford their ***nonexempt*** employees meal periods and rest periods during the workday.") (emphasis added).  The question of whether Yardley was misclassified as exempt is not before the Court on this Motion.

However, if the fact finder were to find that Yardley was misclassified, and thus, a nonexempt employee, then ADP would have been required to "relieve[] [her] of all duty, relinquish[] control over [her] activities and permit[] [her] a reasonable opportunity to take an uninterrupted 30–minute [meal] break, and . . . not impede or

Case No. **CV-13-04639-MWF (JCGx)**          Date:  **March 12, 2014**

Title:      Jennifer Yardley *-v-* ADP TotalSource, Inc., et al.

discourage [her] from doing so." *Brinker*, 53 Cal. 4th at 1040.  The employer would have a similar obligation for rest breaks.  *See Brinker*, 53 Cal. 4th at 1033 ("An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry.")

Despite the fact that ADP has a meal-break policy that appears facially compliant with state law (SGD, ¶ 6), and that no one directly instructed Yardley that she could not take meal or rest breaks (SGD, ¶ 9), these facts do not foreclose Yardley's meal and rest break claim.  The California Supreme Court has indicated that "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Brinker*, 53 Cal. 4th at 1040.  Even though Yardley testified that, at times, she ran personal errands during the workday (Yardley Depo. 376:3-17), there are genuine issues of material fact as to whether Yardley's workload and her perceived pressure to meet certain work metrics prevented her from taking meal and rest breaks on other occasions (SDG, ¶¶ 34, 35; Yardley Depo., 379:10-20).

Accordingly, the Motion is **DENIED** as to Yardley's meal and rest period claims.

In sum, the Motion is **GRANTED IN PART** as to Yardley's wrongful termination claim, IIED claim, and prayer for punitive damages.  The Motion is **DENIED IN PART** as to Yardley's meal and rest break claim.

IT IS SO ORDERED.